**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| WANHUA CHEMICAL (AMERICA) CO., LTD. | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | **Court No. 26-03235** |
| v. | ) ) | |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) | |

**<u>COMPLAINT</u>**

Plaintiff, Wanhua Chemical (America) Co. Ltd. ("WCA") by and through its counsel, states the following claims against Defendant, the United States:

1.     Plaintiff seeks judicial review of the U.S. International Trade Commission ("USITC" or "Commission")'s affirmative final material injury determination in the antidumping ("AD") duty investigation of Methylene Diphenyl Diisocyanate ("MDI") from China. This USITC determination was published in the *Federal Register* on May 28, 2026. *Methylene Diphenyl Diisocyanate (MDI) from China; Determination,* 91 Fed. Reg. 31,743 (Int'l Trade Comm'n May 28, 2026). *See also Methylene Diphenyl Diisocyanate (MDI) from China; Determination*, Inv. No. 731-TA-1733 (Final), USITC Pub. 5737 (May 2026) ("*Views and Final Report*").

2.      Thereafter, the U.S. Department of Commerce ("Commerce") published its notice of the antidumping duty order on MDI from China.  *See Methylene Diphenyl Diisocyanate from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 91 Fed. Reg. 38,393 (Dep't. of Com. Jun. 25, 2026) ("*AD Order*").

## JURISDICTIONAL STATEMENT

3.      The Court has jurisdiction over this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and (B)(i) to review a final affirmative determination made by the USITC under 19 U.S.C. § 1673d(b).  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

4.      WCA is a U.S. importer of the merchandise subject.

5.      Plaintiff is, therefore, an interested party as defined in 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).  Moreover, Plaintiff fully participated in the proceeding being challenged.  Accordingly, Plaintiff has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.      The USITC published its affirmative final determination in the *Federal Register* on May 28, 2026.  *See Methylene Diphenyl Diisocyanate (MDI) from China; Determination,* 91 Fed. Reg. 31,743 (May 28, 2026) ("*USITC Final Determination*").  On

June 25, 2026, Commerce's AD Order was published in the *Federal Register*.  *See AD Order*.

7.    Plaintiff filed its Summons for this action on July 13, 2026 (ECF No. 1).[1] Therefore, Plaintiff commenced this action within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

8.    Plaintiff is filing this Complaint on July 20, 2026, one week after the filing of the Summons.  Therefore, Plaintiff has also complied with the deadline set forth in 19 U.S.C. § 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

9.    The underlying agency proceeding began in response to the submission of a petition seeking the imposition of AD duties on imports of MDI China on February 12, 2025.  *See Petition for the Imposition of Antidumping Duties on Imports of Methylene Diphenyl Diisocyanate from China* (Feb. 12, 2025).  On February 19, 2025, the USITC published its notice of institution for the preliminary investigation in the Federal Register. *See Methylene Diphenyl Diisocyanate (MDI) from China; Institution of Antidumping Duty Investigation and Scheduling of Preliminary Phase Investigation*, 90 Fed. Reg. 9913 (Int'l Trade Comm'n Feb. 19, 2025).

10.    On March 11, 2025, Commerce initiated its AD investigation.  *See Methylene Diphenyl Diisocyanate (MDI) from the People's Republic of China*: *Initiation*

---

[1] Plaintiff filed an amended Summons on July 16, 2026 (ECF No. 15).

*of Less-Than Fair-Value Investigation*, 90 Fed. Reg. 11,710 (Dep't. of Com. Mar. 11, 2025).

11. On April 4, 2025, the USITC rendered its affirmative preliminary injury determination, concluding that there was "reasonable indication that an industry in the United States is materially injured by reason of imports" of the subject products. *See Methylene Diphenyl Diisocyanate (MDI Products) from China*, 90 Fed. Reg. 14,868 (Int'l Trade Comm'n Apr. 4, 2025).

12. On September 25, 2025, the USITC published its notice scheduling the final phase of the injury investigation. *See Methylene Diphenyl Diisocyanate (MDI Products) from China; Scheduling of the Final Phase of an Antidumping Duty Investigation*, 90 Fed. Reg. 46,253 (Int'l Trade Comm'n Sept. 25, 2025). Subsequently, the USITC issued questionnaires to all known U.S. producers, U.S. importers, foreign producers and exporters and U.S. customers of MDI products. In addition, the USITC posted all of its questionnaires on its website.

13. Based on these questionnaire responses and other information submitted to or obtained by the USITC, the USITC Staff issued its Pre-Hearing Report on March 19, 2026. This Pre-Hearing Report summarized the submitted data as of that point in time.

14. Thereafter, all interested parties submitted pre-hearing briefs.

15. A public hearing was held on April 2, 2026. *See USITC Final Determination*, 91 Fed. Reg. at 31,743. The hearing included testimony from WCA officials that provided sworn testimony on the real-world competitive dynamics involved in the MDI market.

- 4 -

16.     During the hearing, WCA officials reiterated information and data that had previously been provided to the USITC demonstrating that the volume of imports of MDI was insignificant, the price of such imports neither depressed nor suppressed the price of the domestic like product, and such imports did not adversely impact the domestic industry.

17.     After the hearing, the parties submitted post-hearing briefs.

18.     The USITC Staff's Final Report (Staff Report) was issued on April 28, 2026.  This Staff Report summarized the submitted data as of that point in time, revising the Pre-Hearing Report issued on March 19, 2026.  *See Methylene Diphenyl Diisocyanate (MDI Products) from China; Staff Report, Inv. No. 731-TA-1733* (Mar. 19, 2026); *Views and Final Report.*

19.     Thereafter, interested parties filed their final comments.

20.     On May 1, 2026, the USITC voted three to zero in the affirmative that the domestic MDI industry was materially injured by reason of MDI imports from China.

21.     On May 22, 2026, the USITC rendered its written rational for its conclusion that the domestic MDI industry was materially injured by reason of MDI imports from China and India.  This USITC decision was published in the *Federal Register* on May 28, 2026.

22.     The written views of the USITC, which include the USITC's rationale for its affirmative injury determinations, are set forth in the USITC's report.  *See Views and Final Report*.

23.     Following issuance of the USITC's written rationale, Commerce published

the antidumping duty order in the *Federal Register* on June 25, 2026.  *See AD Order.*

## STATEMENT OF CLAIMS

**Count One:**          **The USITC's Conclusion Of Significant Adverse Volume Effects Is Unsupported by Substantial Evidence and Otherwise Not In Accordance With Law**

24.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1

through 23.

25.     Pursuant to 19 U.S.C. § 1677(7)(C)(i), the USITC is directed to "consider

whether the volume of imports of the merchandise, or any increase in that volume, either

in absolute terms or relative to production or consumption in the United States, is

significant."

26.     In its *Views and Final Report*, the USITC ignored clear evidence that

provided important context as to why the increase in subject MDI imports from China

could not be considered significant in any economically meaningful sense.  Such

evidence included, *inter alia*, that subject import volume and market share were stable,

increased only modestly over the full-year period, and declined sharply in the interim

period.

27.      Specifically, the USITC failed to adequately account for the following

record evidence:

- o  WCA's subject imports did not take market share from domestic producers and U.S. producers gained market share over the period.

- o  The limited overlap between subject imports and domestic shipments across distinct MDI product segments.

    o   The role of non-subject imports, including imports by domestic producers, in explaining market-share changes and competitive dynamics.

    o   WCA's import curtailment decision was made before the petition and was driven by tariff and trade-policy concerns.

28.    The USITC's volume determination is therefore unsupported by substantial evidence and otherwise not in accordance with law.

**Count Two:**    **The USITC's Price Effects Determination Is Unsupported by Substantial  Evidence and Otherwise Not In Accordance with Law**

29.    WCA realleges and incorporates paragraphs 1 through 28.

30.    Under the statute, the USITC considers possible adverse price effects from subject imports on domestic prices from several perspectives.  The USITC examines whether domestic prices have been "depressed" (in other words, have domestic prices declined), whether domestic prices have been "prevented" from increasing (in other words, are increasing domestic prices lower than would have been expected given changing costs), and whether there has been "underselling" (in other words, have subject import prices been lower than comparable domestic prices).  These perspectives are different ways to approach the overarching legal question of "the effects" of subject imports on domestic prices, and whether domestic prices have been adversely affected to a "significant" degree by subject imports.

31.    The statute makes explicit that the focus is on "the effect of" the subject imports on domestic prices, not domestic prices in isolation.  Thus, if domestic prices are falling for other reasons, those falling prices are not "the effect" of subject imports and

cannot establish adverse price effects.  The statute also makes explicit that any price depression, price suppression, or price underselling must be to a "significant" degree. Any underselling must be "significant price underselling."

32.    The USITC largely ignored these statutory mandates in its analysis of whether subject MDI imports from China were having adverse effects on U.S. producer selling prices.  As such, the USITC's conclusion of adverse price effects from subject MDI imports from China is otherwise not in accordance with law.

33.    In addition, the USITC's conclusion of adverse price effects from subject MDI imports from China is also unsupported by substantial evidence.  In rendering its determination, the USITC failed to adequately account for the following record evidence:

- o MDI products are differentiated, serve different end-use applications, and have different pricing dynamics.

- o Price was not the most important purchasing factor for most purchasers and many purchasers bought WCA product for availability, reliability, quality, supply security, or diversification reasons.

- o Falling raw material costs, weakening downstream demand, and normalization from record-high 2022 prices were the principal causes of domestic price declines.

- o Extensive evidence that 2022 was an aberrational year due to domestic supply disruptions, force majeure events, and market tightness.

- o Evidence that non-subject imports undersold domestic product frequently and contributed to price pressure independent of subject imports.

34.    In addition, the USITC improperly discounted or failed to reasonably engage with Professor Prusa's analysis showing that subject import prices and volumes had small, statistically insignificant effects on domestic prices.

- 8 -

35.    The USITC's price effects determination is therefore unsupported by substantial evidence and otherwise not in accordance with law.

**Count Three:    The USITC's Conclusion Of Significant Adverse Impact Is Unsupported by Substantial Evidence and Is Otherwise Not In Accordance with Law**

36.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 35.

37.    In examining the impact of the subject imports on the domestic industry, the Commission "shall evaluate all relevant economic factors which have a bearing on the state of the industry." 19 U.S.C. § 1677(7)(C)(iii).  Although many factors are enumerated, no single factor is dispositive, and all relevant factors are considered "within the context of the business cycle and conditions of competition that are distinctive to the affected industry." *Id*.  The Commission must also examine factors other than the subject imports to ensure that it is not inappropriately attributing injury from other factors to the subject imports, thereby inflating an otherwise tangential cause of injury into one that satisfies the statutory material injury threshold.

38.    Moreover, this analysis of any adverse impact focuses on the present, not the past.  The Commission collects information for a historical period of investigation to provide context for a decision about the present condition of the domestic industry.  The statute directs the Commission to determine whether a domestic industry "is materially injured" or "is threatened with material injury." 19 U.S.C. § 1673d(b)(1) (antidumping cases); 19 U.S.C. § 1671d(b)(1) (countervailing duty cases).  This use of the present tense

makes explicit the Commission's determination must be about the present situation of the industry and not the past.

39.     The USITC did not comply with these statutory directives and therefore the USITC's final determination is not in accordance with law.

40.     In addition, the USITC's conclusion of adverse impact from subject MDI imports from China is also unsupported by substantial evidence.  In rendering its determination, the USITC failed to adequately account for the following record evidence:

- o The absence of a meaningful correlation between subject import volume, subject import market share, underselling margins, and domestic industry operating performance.

- o Domestic producers' production, capacity utilization, shipments, and market share improved in certain periods, including interim 2025.

- o The domestic industry continued to face price and financial pressure after subject imports sharply declined, which undermined the Commission's causation finding.

- o Confirmed lost sales and lost revenue allegations represented only a small share of reported purchaser volume.

41.     In addition, the USITC improperly discounted or failed to reasonably engage with Professor Prusa's analysis showing that other factors, including, *inter alia*, raw material cost movements, demand changes, and domestic production outages had a greater effect on U.S. producer prices than subject imports.

42.     The USITC impact and causation determination is therefore unsupported by substantial evidence and otherwise not in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(A)    Enter judgment in favor of Plaintiff;

(B)    Hold as unlawful the USITC's final injury determination that is the subject of this Complaint,

(C)    Remand this proceeding to the USITC with instructions to publish a revised final injury determination in conformity with the Court's decision; and

(D)    Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
William C. Sjoberg
Gina M. Colarusso

**Pillsbury Winthrop Shaw Pittman LLP**
1700 Seventeenth Street, N.W.
Washington, D.C. 20043
202-336-8140

*Counsel for Plaintiff WCA*

Dated: July 20, 2026

- 11 -